UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JSB-1, *by Alise Bradley*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-266 JD |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This is a social security appeal on behalf of a child, referred to herein as "Plaintiff."[1] Plaintiff's mother alleges that he is disabled by a physical disorder of his lower extremities and by a severe speech and language impairment. An administrative law judge agreed that Plaintiff had severe impairments but found that he did not qualify as disabled. Plaintiff's mother now seeks review of that decision. For the reasons contained herein, the Court will remand this matter to the Commissioner.

**STANDARD OF REVIEW**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable

---

[1] The complaint identifies the child as "JSB-1," as another case was filed the same day on behalf of the child's sibling, who has the same initials.

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399-400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## DISCUSSION

Under Supplemental Security Income rules, a child is disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 1382c(a)(3)(C)(i). This assessment requires a three-step analysis. 20 C.F.R. § 416.924(a); *Jelinek v. Astrue,* 662 F.3d 805, 809-10 (7th Cir. 2011). At step one, if the child is engaged in substantial gainful activity, then he is not disabled. *Id*. At step two, if the child does not have a severe medical impairment or combination of impairments, then he is not disabled. *Id*. At step three, a child will qualify as disabled only if his impairments "meet," "medically equal," or "functionally equal" any of the listings contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

To determine if a child's impairments are "functionally equivalent" to a listing, an ALJ analyzes their severity in six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); *Sanchez v. Barnhart*, 467 F.3d 1081, 1082 (7th Cir. 2006) (since children do not generally have work history, the structure of the disability program for them necessarily differs from that for adults, and focuses on the functioning of the child in specified areas of life activity). For a child to functionally equal a listing, the ALJ must find an "extreme" limitation in one domain or a "marked" limitation in two domains. 20 C.F.R. §§ 416.926a(a), (e)(2)(i).

A "marked" limitation is one that "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation represents functioning between two and three standard deviations below the mean. A limitation is "extreme" if it "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). It represents functioning at least three standard deviations from the mean.

Here, at step two, the ALJ determined that Plaintiff's speech and language impairment and developmental delay were severe impairments within the meaning of the regulations. Proceeding to step three, she found that these impairments did not medically equal any of the listings. The ALJ then assessed whether, under the six domains, Plaintiff's condition functionally equaled any listed impairment. The ALJ determined that Plaintiff had a "less than marked" limitation in the domains of acquiring and using information, moving about and manipulating objects, and health and physical well-being. (R. 26-27, 29-31). The ALJ also found "no limitation" in the domains of attending and completing tasks, interacting and relating with others, and ability to care for oneself. (R. 27-31).

Plaintiff now challenges the ALJ's findings on several grounds. The Court, however, need not address all of Plaintiff's arguments because the ALJ committed error at step three by ignoring an entire line of evidence that contradicts her analysis of Plaintiff's restrictions in the domains of moving about and manipulating objects and health and physical well-being. This requires remand.

## A.     Evidence of Existing Limitations

As part of her step three analysis, the ALJ assessed Plaintiff's restrictions in the six domains listed above. Plaintiff now contends that the ALJ impermissibly omitted consideration of evidence that undermines the bases for her conclusions in the domains of moving about and manipulating objects and health and physical well-being. In particular, Plaintiff criticizes the ALJ's observation that he experienced no problems with ambulation after 2015, noting that Plaintiff's mother provided contradicting testimony that, as of mid-2017, Plaintiff still could not walk and run without consistently falling due to an unresolved impairment in his foot. [DE 19 at

20-21][2] The ALJ, however, overlooked this line of evidence, and the Court agrees that remand must follow, especially considering the weight placed on Plaintiff's mobility issues (or, the perceived lack thereof) in the ALJ's discussion of these two domains.

The domain of moving about and manipulating objects considers how a child moves his body from one place to another and how he moves and manipulates objects. 20 C.F.R. § 416.926a(j). These tasks require the use of both gross and fine motor skills and involve, among other actions, moving forward and backward in space as when walking or running, and engaging the upper and lower body to transfer objects from one place to another. *Id.* §§ 416.926a(j)(1)(ii)-(iii). With regard to this domain, the ALJ concluded that Plaintiff has a less than marked restriction. (R. 30). The ALJ provided the following explanation for this finding:

> The claimant had noted issues with ambulation in 2014, *but there were no reported difficulties with ambulation since 2015*. At the hearing the claimant's mother testified that he is able to feed himself, and he was able to walk, run, and jump. The claimant also reported playing basketball, an activity that suggests significant improvement in his gross motor skills since 2014.

*Id.* (emphasis added). The ALJ likewise found that Plaintiff has a less than marked restriction in the domain of health and physical well-being, which considers the cumulative physical effects of physical or mental impairments and their associated treatments that are not already consider in the domain of moving about and manipulating objects. 20 C.F.R. § 416.926a(l). The ALJ supported her finding, in part, with the following reasoning: "[Plaintiff] is not currently on any medications, *and orthotics fixed his difficulties with walking*." (R. 31) (emphasis added).

---

[2] The Commissioner does not directly respond to this argument, and admittedly, the argument could have been more clearly articulated. For example, although Plaintiff's brief refers generally to the mother's "testimony" and "account" in relation to "ongoing gross motor limitations," Plaintiff does not cite the mother's testimony directly, and thus does not discuss the specific limitations she detailed, namely, Plaintiff's turned foot. Nonetheless, even if Plaintiff had made *no* attempt to present this argument, the argument may still have supported remand here, because "a reviewing court may *sua sponte* address issues in social security cases." *Mangan v. Colvin*, Case No. 12 C 7203, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014) (collecting cases).

5

Again, "[g]enerally speaking, an ALJ's 'adequate discussion' of the issues need not contain 'a complete written evaluation of every piece of evidence.'" *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). Still, the ALJ must provide a "logical bridge" from the evidence to her conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). Put another way, "although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling. Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted).

To some degree, the ALJ did take Plaintiff's struggles with mobility into consideration. For example, the ALJ discussed that in May 2014, Plaintiff was noted to be "extremely plantarflexed when standing and attempting to take steps, which limited his ability to progress with ambulation skills." (R. 24, 267). She also noted that Plaintiff's gross motor skills in May 2014 "had changed very little over the past three months, and [he] still used crawling as his primary method of moving about." (R. 24, 263). The ALJ further acknowledged that Plaintiff was fitted for orthotics in August 2014 for his plantarflexed posture, which resulted from Plaintiff's being born premature (R. 24, 205-08), and that as of October 2014, his gait was observed as "wobbly" and he was unable to run. (R. 25, 414).

By the time of Plaintiff's hearing in 2017, according to Plaintiff's mother and as noted by the ALJ, the orthotics had served their purpose by helping lower his heels to the ground such that he no longer needed to wear them. (R. 24, 49). This, combined with Plaintiff's mother's testimony that Plaintiff could walk, run, and jump, as well as the lack of treatment records postdating 2015, led the ALJ to conclude that "[t]here is no evidence that the claimant's

6

impairments are still problematic." (R. 25). But the ALJ overlooked an entire line of testimony from Plaintiff's mother explaining that, while the leg braces corrected Plaintiff's plantarflexed posture, they did nothing to resolve a *separate* issue with his right foot, which is turned inward. (R. 48-51). According to Plaintiff's mother, this impairment has been present for several years and requires a different prescribed orthotic for which Plaintiff's family had been seeking a referral. (R. 49-50). Thus, not only did the ALJ neglect an entire line of evidence, but she also impermissibly cherry-picked from and somewhat misconstrued the record by broadly stating that Plaintiff's braces "corrected his impairment." (R. 24). *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ … cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). And although the ALJ acknowledged that Plaintiff can walk, run, and jump, the ALJ further omitted reference to the mother's testimony that Plaintiff can only perform those functions within the limitations allowed by his turned foot. For example, Plaintiff's mother testified that Plaintiff's right foot causes him to trip and fall "a lot of times" because when he ambulates, it drags behind his other foot. (R. 51).

Thus, it cannot be said, as the ALJ reasons, that "there were no reported difficulties with ambulation since 2015" and that Plaintiff's braces "fixed his difficulties with walking." (R. 30-31). Indeed, the mother's testimony indicates that mobility issues still existed for Plaintiff at least as of June 15, 2017, the date of his hearing. The ALJ's failure to even address these ongoing issues requires remand. *Zurawski*, 245 F.3d at 889 (remanding where ALJ only discussed medical records favoring denial of benefits and omitted discussion of MRI results that supported disability). Again, the ALJ need not address every piece of evidence in the record, but here she has not even "provide[d] some glimpse into the reasoning behind her decision to deny benefits,"

7

as the ALJ does not explain how the evidence of Plaintiff's ongoing mobility issues was overcome by the evidence on which she relied. *Id.*

Among the many potential difficulties experienced by a child with limitations in the domain of moving about and manipulating objects, the regulations list "jerky or disorganized locomotion," in addition to problems with coordinating gross motor movements, such as running. 20 C.F.R. § 416.926a(j)(3). And, children who struggle in the domain of health and physical well-being may experience limitations in physical functioning due to treatment, or a medical fragility requiring intensive medical care to maintain a level of health and well-being. *Id.* § 416.926a(l). Tracing these several examples, Plaintiff's mother testified that the condition of Plaintiff's turned foot causes him problems with mobility and requires medical intervention in the form of orthotics. In the end, Plaintiff's persistent limitations may or may not impact the ALJ's determination as to Plaintiff's restrictions in the domains of moving about and manipulating objects and health and physical well-being, or whether his case merits an award of benefits, but that is for the ALJ—and not this Court—to decide on remand. *Lopez*, 336 F.3d at 539.[3]

**B.     Additional Arguments**

Several of Plaintiff's remaining arguments, however, do not persuade the Court. For example, Plaintiff criticizes the ALJ's assertion that he "attended school without major issues with communicating" (R. 27) as "flatly incorrect" because the record contains no evidence that he advanced to kindergarten or otherwise attended school. [DE 19 at 25] This argument is both misleading and inconsequential. Indeed, Plaintiff's mother unambiguously confirmed at the

---

[3] Even if Plaintiff's unresolved mobility issues impacted the ALJ's analysis with respect to only *one*, and not both of these domains, remand would still be required because, again, a child's impairment may functionally equal the listings if the impairment results in either an "extreme" limitation in one domain, *or* a "marked" limitation in at least two domains. 20 C.F.R. §§ 416.926a(a), (e)(2)(i).

8

hearing that Plaintiff attended school. (R. 46-47). Moreover, the regulations themselves do not recognize a distinction between attending preschool and attending kindergarten, as Plaintiff suggests; it is the Plaintiff's age that matters. The ALJ here correctly determined that Plaintiff was a "preschooler" at the time of her decision based on his date of birth and analyzed his claims (in relevant part) under the framework of 20 C.F.R. § 416.926a(g)(2)(iii). (R. 22). Subsection (g)(2)(iii) pertains to the domain of acquiring and using information by "preschool children"—which includes all children between the ages of three and six—and states: "When you are old enough to go to preschool *or* kindergarten, you should begin to learn and use the skills that will help you to read and write and do arithmetic when you are older." (emphasis added). Thus, whether a child of Plaintiff's age exhibits a limitation in this domain does not hinge on whether he advanced to kindergarten from preschool.

Plaintiff also accuses the ALJ of impermissibly "playing doctor" because she relied on her observation that Plaintiff could answer her questions at the hearing to determine that he had a less than marked limitation in the domain of acquiring and using information. (R. 27). This argument spans one sentence and is completely undeveloped. [DE 20 at 15] Nevertheless, it fails on its face because ALJs are entitled to rely on observations of a claimant during a hearing. *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000).

As a final point, the Court declines to address Plaintiff's argument that the ALJ failed in her duty to fully develop the record. On remand, the ALJ can determine whether additional medical evidence has been recorded during the passage of time here, and she can incorporate that evidence into the new record as necessary.

## CONCLUSION

For the reasons stated herein, the Court hereby **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to enter judgment for the Court's approval.

SO ORDERED.

ENTERED: June 14, 2019

    /s/ JON E. DEGUILIO
Judge
United States District Court